**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: December 16, 2015
Date Decided: March 8, 2016

Col. Gerald A. Lechliter
44 Harborview Road
Lewes, DE 19958

Ralph K. Durstein, III, Esquire
Devera B. Scott, Esquire
William J. Kassab, Esquire
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801

Stephen E. Smith, Esquire
Glenn C. Mandalas, Esquire
Baird Mandalas & Brockstedt, LLC
6 South State Street
Dover, DE 19901

Re: *Gerald Lechliter v. Delaware Department of Natural Resources,*
Civil Action No. 10430-VCG

Dear Col. Lechliter and Counsel:

This is my letter opinion in consideration of Colonel Lechliter's 48-page speaking motion for reargument of my Memorandum Opinion of November 30, 2015 (the "Speaking Motion"). The Defendants have responded to this remarkable document, and I have considered it closely. For the following reasons, the motion is denied. Before I turn to those reasons, however, a few observations are in order.

Colonel Lechliter, as I have noted several times in past opinions of this Court, is a passionate and intelligent *pro se* litigant.[1] He lives on a quiet cul-de-sac south of the Lewes and Rehoboth Canal in Lewes. Near his home is a large parcel of land that had been set aside as an industrial park, owned by the University of Delaware. That park was never developed, and the land was acquired by the State of Delaware. Much of it is open space. Lechliter has litigated vigorously in opposition to a number of uses of this property, including use of a portion, to which the University of Delaware has easement rights, for the location of a wind turbine; use of other areas for access to adjacent housing developments; use for recreational hunting; and, pertinent here, a lease by the State of a portion of the property to the City of Lewes, within which the City has designated a "dog park"—that is, a fenced-in open area within which owners may allow dogs to run at large. While this area is not contiguous with Lechliter's property, it is nearby, and he fears that it will disturb the quiet enjoyment of his property. Heretofore, Lechliter's property bordered a section of the old industrial park that was vacant, and little-visited, brush land.

In his many causes of action distributed over two separate litigations against the State, DNREC, and the City of Lewes,[2] both concerning use of the old industrial

---

[1] *See Lechliter v. Delaware Dep't of Natural Res. & Env't Control*, 2015 WL 9591587 (Del. Ch. Dec. 31, 2015); *Lechliter v. Delaware Dep't of Natural Res. & Env't Control*, 2015 WL 7720277 (Del. Ch. Nov. 30, 2015).

[2] *Id.*

park, Lechliter has appeared *pro se*. As I have said, Lechliter is an intelligent man of indefatigable energy. However, he is not legally trained, a deficit that is apparent in his pleadings and briefing. A portion of his Speaking Motion is taken up with his passionate argument that I have misconstrued his characterization of the various claims and causes of action he brings, or have incorrectly evaluated the legal issues thereto pertaining. Perhaps so; I address those arguments below. But he also argues strenuously that I have treated him unfairly, because I have not accorded him the deference that is due a non-law-trained *pro se* litigant attempting to make a case in this Court. I regret that such is his opinion. I have striven to be scrupulously fair to Lechliter and believe I have given him the full opportunity to present his many arguments that the City and State have failed to comply with the law with regard to the creation of the dog park. Perceptions, however, are simply that; I can but state mine. More fundamentally, however, Lechliter's comments deserve a substantive response.

It is indeed the strong policy of this Court to decide issues on the merits. It is also within the Court's discretion to give certain latitude to *pro se* litigants in recognition of their limited familiarity with the thankfully much-simplified, but still intimidating, procedural rules within which they must operate in any court system. Such consideration cannot be one-sided, however. I will not detail the long history and numerous arguments and bench rulings in the two *Lechliter* cases involving the

3

old industrial park, which until recently have been pending before this Court. I will note that, in this litigation alone, Lechliter has sued the Delaware Department of Natural Resources and Environmental Control ("DNREC"), the DNREC Division of Parks and Recreation, the Delaware Department of Transportation, the Mayor and Council of the City of Lewes, J.G. Townsend, Jr. & Company, Lingo Asset Management, LLC, Lewes Unleashed Association, and Lifetime Living, LLC. All of these entities[3] have been forced to hire counsel to respond to Lechliter's vigorous litigation. A few of Lechliter's contentions have survived case-dispositive motions, but many have been dismissed, and some were frivolous. This is not to question Lechliter's good faith in so proceeding. But had he chosen to hire counsel, much of this litigation would have been avoided.

Delaware follows the American Rule on legal fees under which both winner and loser pay their own fees.[4] There is much to commend this rule over the English Rule—loser pays—because the threat of fee shifting available under the English Rule surely chills much valid litigation. On the other hand, the American Rule permits a *pro se* plaintiff to litigate good faith but non-viable claims in a nearly cost-free manner—incurring only the filing fees required by the Court—despite the significant legal fees and other disruption and expense that his litigation may cause

---

[3] Lifetime Living, LLC failed to make an appearance here.

[4] *See, e.g.*, *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del. 2006).

4

to his opponents, and despite the significant use of judicial resources thereby. In other words, the English Rule risks too little valid litigation; the American Rule encourages the reverse. I shall not comment further on whether I have treated Lechliter fairly as a *pro se* litigant in a court of equity, other than to say I believe I have struck the proper balance here, and regret that Lechliter sees it otherwise. I now turn to the merits of the motion.

Lechliter has moved under Rule 59(f) for reargument. Under that rule, proper grounds for a motion for reargument are that the Court has overlooked a controlling precedent or misapprehended the law or the facts of the case in a way that would have changed the outcome of the underlying decision.[5] Rule 59 is not a vehicle to rehash or more forcefully present arguments already made, however.[6] With that standard in mind, I examine the errors assigned in the Speaking Motion. After close review, I find no grounds on which to grant the motion. Lechliter makes three species of argument in the Speaking Motion: first, that I fundamentally misunderstood his argument regarding the Lewes 2005 Comprehensive Plan (the "Comprehensive Plan"); second, that I unfairly or improperly found that Lechliter had waived an argument that the dog park violated 30 *Del. C.* § 5423(c)(2); and

---

[5] *Brown v. Wiltbank*, 2012 WL 5503832, at *1 (Del. Ch. Nov. 14, 2012).
[6] *Id.*

third, that I simply reached the wrong result with respect to numerous issues. I examine those arguments separately in turn.

### A. *Plaintiff's Argument that I Misconstrued his Contention that the Dog Park Violated the City's 2005 Comprehensive Plan*

The Plaintiff devotes 10 pages of the Speaking Motion to his contentions regarding this claim. First, he asserts that I conflated his argument concerning the Comprehensive Plan with a separate argument that he had also made that "the Dog Park violated the City's Zoning Ordinance."[7] In support of the argument that he had pled a justiciable Comprehensive Plan claim, Lechliter quotes in the Speaking Motion language from his answering brief to the City's motion to dismiss, precisely as set out below:

> "The City never amended its 2005 State-approved Comprehensive Plan . . . to incorporate the Premises [the Ground Lease 66.36 acres] as a City park **or** made a determination that a Dog Park was consistent with the Open Space zoning designation. . . . the Dog Park "is **inconsistent** with the City's 2005 Comp Plan."[8]

Based on this language, Lechliter attempts to argue that I was on notice that he was arguing that the City, after obtaining the lease for the dog park, failed to amend its Comprehensive Plan in a way that is consistent with the use of the dog park as a recreation area. He contends that the Court, therefore, has not addressed the

---

[7] Speaking Motion, at 3.
[8] The ellipses, bolding, and quotation marks are taken directly from the Speaking Motion, at pages 3–4.

6

following issues: Is the dog park "*consistent* with the 2005 Comp Plan if [it is] not included in its map with the City parks and text listing City Parks and does Lechliter have standing to challenge [its] approval if the Premises in Dog Park are not consistent with the Comp Plan?"[9]

In his complaint, Lechliter made allegations regarding the Comprehensive Plan but failed to seek any resulting relief. At oral argument on the Defendants' motions to dismiss, I found Lechliter's arguments with respect to the Comprehensive Plan and City Zoning Code difficult to follow. When asked to explain the Comprehensive Plan violation, Lechliter directed me to a "Table of permitted uses in the City" that can be found in an attachment to Chapter 197 of the City of Lewes Code,[10] which contains the City's zoning regulations:

> MR. LECHLITER: If you look at the comp plan, at the maps, first page, I don't think you'll see the dog park listed there. In fact, the comp plan didn't even incorporate the area that DNREC bought and was proposing to lease to the City into its body, ever. Because if you look at that map where the road going into the University of Delaware area is, you will see proposed DNREC lease to Lewes. It was never incorporated. It was never incorporated into the comp plan, and it is not listed as a park. If you go to the next map, "Future Land Use," you'll see that that area is to be open space. And I provided the City, I provided the City with a -- I believe it was March 2013 input. I said, "Guys, you might want to look at this. You might have to change your zoning. I didn't say you couldn't do it. I said you might have to change your zoning."
>
> THE COURT: Why isn't the dog park part of the open space?

---

[9] Speaking Motion, at 11.

[10] "City of Lewes Table of Permitted Uses and Structures," City of Lewes Code, Chapter 197, at Attachment 1.

MR. LECHLITER: Because in the open space regulations, and that's explained in a rather detailed exhibit in my briefs, open space does not allow for recreation.

THE COURT: Open space does not allow for recreation?

MR. LECHLITER: Table of permitted uses in the City. It's not my table of permitted uses.

THE COURT: Show me that because I don't understand that.

MR. LECHLITER: It allows parks, but parks must be owned or used by a public entity, a public entity being a city, a municipality or - -

THE COURT: This is a public park, isn't it? The dog park is a public park, is it not?

MR. LECHLITER: But the definition of park in the City Code is at odds. It is a public park; but a public entity, public entity is something different. And I explained that in the, in my letter to the City, Your Honor. It isn't as if I didn't – I pulled this out –

THE COURT: But that doesn't mean you're right.

MR. LECHLITER: No. It doesn't mean I'm right, but I think --

THE COURT: I just.

MR. LECHLITER: I think --

THE COURT: How could a dog park which is open to the public and on City land not be a public park that's permitted open space use?

MR. LECHLITER: Well, I'm saying that this recreation is not permitted on open space.[11]

I allowed supplemental post-argument briefing on the issue. I characterized Lechliter's arguments, as he made them at oral argument and in the supplemental briefing, to the best of my ability to do so, in a way I considered fair to all the parties, and addressed them in the Memorandum Opinion.[12] Having chosen to advance his points at oral argument in the way that he did, Lechliter is bound by that choice. Of course, if he believes I have unfairly mischaracterized an argument on which he is

---

[11] Oral Argument Tr. 46:14–48:17.

[12] *See Lechliter*, 2015 WL 7720277, at *8.

entitled to relief, he is free to appeal that point after a final judgment in this matter. However, I do not find this to be a proper ground for reargument under Rule 59(f) and Lechliter's motion on this ground is denied.

### B. Plaintiff's Contention that the Court Should Have Considered 30 Del. C. §5423(c)(2)

Lechliter argues that I improperly found that he had waived any argument under Section 5423, which is mentioned in the complaint, because he had failed to refer to it in oral argument. He states in the Speaking Motion that:

> [Contrary to the Memorandum Opinion], Defendants waived any argument related to 30 *Del. C.* § 5423 (c)(2), and *ergo* Plaintiff was not required to raise it at Oral Argument or in his Answering Briefs.[13]

The Plaintiff was well aware that he was at oral argument to contest the Defendants' case-dispositive motions to dismiss. By failing to refer to Section 5423, under the circumstances presented, he has waived any claim for relief under the statute. Oddly, although he argues at length in the Speaking Motion that my finding of waiver was unfair, he still has not elucidated his argument that the Dog Park is illegal under that section. I remain unable to adjudicate his argument, whatever it may be. 30 *Del C.* § 5423 provides, in part:

> It is intended that property acquired with funds from the Endowment Account shall remain in public outdoor recreation and conservation use in perpetuity. Said property may not be converted to other uses without a subsequent act of the General Assembly. If the General Assembly approved the sale of any project or portion thereof, the State shall

---

[13] Speaking Motion, at 22.

receive its pro rata share of net sale income. Said funds shall be deposited in the Endowment Account to be immediately available for other projects.[14]

It is simply not obvious to me how the use of the leased property as a dog park violates this language. Even if reargument were otherwise appropriate here, it would be unavailing.

### C. Plaintiff's Remaining Contentions in the Speaking Motion

Lechliter contends that I reached incorrect results in the Memorandum Opinion, as follows:

- "[Contrary to the Memorandum Opinion,] Plaintiff clearly established that DNREC acted outside of the scope of its legislative authority in amending and granting an easement for the use of Open Space as an access road . . . ."[15]
- "The Court's *bench ruling* invoking laches" was incorrect.[16]
- "[Contrary to the Memorandum Opinion,] Plaintiff was an intended beneficiary of the Lease" between DNREC and Lewes, and had standing to enforce the lease.[17]
- "The Court ruled erroneously that the [Lewes Mayor and City Council's] approval of the Dog Park was a legislative action."[18]

I have reviewed these arguments closely. Lechliter argues passionately that I have gotten these rulings wrong. He does not point to a misapprehension of the law or facts, however; rather, he simply resubmits the arguments that I have already

---

[14] 30 *Del. C.* § 5423(c)(2).
[15] Speaking Motion, at 14.
[16] *Id.* at 30 (emphasis in original). I note that the Speaking Motion is untimely with respect to this ruling.
[17] *Id.* at 35.
[18] *Id.* at 40.

rejected. It is not the purpose of a motion under Rule 59(f) to relitigate or rehash issues already addressed. Lechliter may be correct that I have erred; that is what appeals are for. Once this matter is final, Lechliter may take whatever appeal he feels is appropriate. The motion for reargument, however is denied.

To the extent the foregoing requires an order to effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

11